Matthews, J.
This is an action, instituted by an only child, to contest the validity of the will of Henry Kohl, deceased.
*172 On the trial proponent of the will, at the close of the plaintiff’s evidence, moved for an instructed verdict sustaining the will, which the court granted. The case now comes before the court upon the plaintiff’s motion for a new trial.
A transcript of the evidence has been furnished the court, and in view of the court’s ruling that no evidence had been adduced tending to invalidate the will, the court has taken considerable pains to examine this transcript of the evidence, seeking for evidence and deductions therefrom tending to invalidate the will, but has been unable to find any. Henry Kohl was a policeman. He had been married twice and had a daughter by the first marriage. About ten years before making the will in question, he divorced his first wife, and within a year thereafter married his second wife. Both his first and second wife and also his daughter, the contestant, survive him. In the divorce case he was ordered to pay twelve dollars per month for the support of his daughter, which order he observed for several years until she secured employment, when he discontinued payments, and proceedings in contempt were prosecuted against him by her. There was certainly no intimate relationship existing between father and daughter after that time, and in 1912, Henry Kohl executed the will in question, in which he gave all his property of' every description to his then wife, and named her as executrix without bond. He died more than three years after the making of the will.
Counsel for plaintiff in his opening statement to the jury claimed that the will was invalid because of lack of testamentary capacity and undue influence exerted by the second wife over the testator. The only evidence that is claimed to show undue influence is that of Josephine Weishaupt, who testified that Mrs. Kohl told her, about the time that the daughter arrived at the age when the payment for her support would be discontinued, that “I will be glad when we are through paying Mabel — that we are done with her; that three dollars a week is my extra pin-money; when we are done with her, that is all Mabel will get; I would rather will it to others.” At that time the home *173 stood in the name of the second Mrs. Kohl. There is no evidence introduced showing that the free agency of Henry Kohl in the execution of his will was destroyed, or that the terms of the will did not in every respect carry out his independent wishes, and in the-opinion of the court, the language attributed to Mrs. Kohl by this witness did not have any legitimate tendency to show that she was dominating her husband, or intended to, or was controlling his mind with reference to the execution of his will.
Upon the subject of testamentary capacity the evidence was equally barren of probative force. The only unusual incident in the life of Henry Kohl was'that relating to the divorce of his first wife and his second marriage. The evidence showed, however, that he secured the divorce, and of course that carried with it the legal conclusion that he was not to blame. The other evidence only showed the usual incidents of the average man’s life, and in the opinion of the court it had no .tendency whatsoever to prove mental incapacity.
It is claimed, however, that the court erred in refusing to permit certain witnesses to express their opinion as to the mental condition of the testator. Charles A. Kohl, a brother, was asked to state his opinion as to the mental condition of the testator on the date he executed the will. The court sustained an objection to the question, and, independent of all other reasons, the court is of the opinion that the ruling was right for the reason that this witness had not seen the testator for years prior to that date.
It is the settled rule that a non-expert witness is only permitted to express his opinion of the mental condition of a testator at the time of observation. This rule is stated in Rogers v. Monroe, 26 C. C. (N. S.), 193. We quote from page 197 of the opinion:
“The defendants called a non-expert witness who was not present at the time of the execution of the codicil on October 20, 1911, and of whom inquiry was made on the witness stand as to the capacity of the testator for transacting the ordinary business affairs of life on that- date. Over the objection of the plaintiff,' the witness was permitted to ■ answer, and the answer *174 was favorable to the defendants. We think this question was improper for the reason that non-expert witnesses must confine their opinions to the capacity of a testator to a time when he is under their observation.”
The same rule was followed in the case of Strick v. Kiss, 26 C. C. (N. S.), 456.
Ella Kohl, the first wife, was called as a witness, and she was asked to express her opinion as to whether the testator was sane or insane in 1912. They had been divorced in 1902 and she had not seen the testator since that date, and of course was not competent to express an opinion as to his sanity or insanity in 1912. Mrs. Kate Kohl, his sister-in-law, was called as a witness, and while there had been no intimate association between her and Henry Kohl, it might possibly be said that she did testify to facts indicating that she had some observation of the testator during 1912 and prior thereto, and she was asked the question as to her opinion as to his sanity in 1912. The court sustained the objection of the proponent of the will to this question. The question sought to elicit the opinion of the witness, not on a collateral matter, but on the direct issue that was being submitted for determination. The witness had testified to no fact or circumstance having any tendency to show mental disorder, and in sustaining the objection to the question, the court followed the rule laid down in Roush v. Wensel, 15 C. C., 133.
The third paragraph of the syllabus of that case is:
“A non-expert witness will not be permitted to testify to his opinion of the mental condition of a testator .until he shall have testified to facts within his knowledge tending to throw light upon such mental condition and forming a basis for such opinion.”
And at page 139, the court says:
“Now, upon what kind of preliminary examination the plaintiff claims the right to ask the witness and have him testify as to the mental condition or capcity of the testator? A non-expert witness may testify to his opinion of the mental condition of *175 a person in connection with certain facts previously related and upon which he bases such opinion. He must state his observations and upon what he founds his opinion, but it must appear that those facts — those circumstances — are such as have a tendency, at least in some degree, to indicate mental weakness.”
The same rule was applied in the case of Moore v. Caldwell, 6 C. C. (N. S.) 484. At page 493 it will be found that the court applied the rule, and after examining the evidence, came to the conclusion that there were facts upon which the opinion could be based.
A more recent case upon this subject is that of Board of Foreign Missions v. Bevan, 17 C. C. (N. S.) 275; 2 Ohio App., 182, in which at page 19Q and 191, the court said:
“The principle has come to be generally recognized that nonprofessional witnesses may give their opinion upon the question of sanity as a result of their personal observations of the person whose mental condition is in issue after stating the facts which they have observed.”
And the court in applying the rule, found that the trial court had erred in permitting eleven witnesses to give their opinions as to the soundness of mind of the testator.
The court is, therefore, of the opinion that no error was committed in excluding the opinion of this witness, that no foundation had been laid for an answer favorable to contestant, and the court is further of the opinion that had this witness been permitted to answer the question, there still legally would have been no evidence of mental incapacity.
In discussing the weight to be given opinions expressed by witnesses, the Supreme Court, in Niemes v. Niemes, 97 Ohio St., at 154 says:
“If in a given case, the inquiry of contestant was limited to such character of questioning, the trial court in review would be justified in holding that no evidence has been offered and in directing a verdict accordingly.”
*176 In considering the evidence in this case on the motion for a new trial, the court has had in mind the decision rendered by the Supreme Court in the case of Clark v. McFarland, the syllabus of which is found in the Ohio Law Reporter of March 10, 1919, in which the court holds that the scintilla rule is applicable to a will contest the same as 'to other civil actions, and in that ease the court held that there was a scintilla of. evidence and that the trial court should have submitted the issues of fact to the jury. From an examination of the report of Clark v. McFarland, 28 O. C. A., 217; 8 Ohio App., 326, it will be found that facts and circumstances were offered in evidence tending to prove mental incapacity and that those facts and circumstances were formulated in a hypothetical question' submitted to two disinterested physicians who testified that in their opinion these facts and circumstances showed mental incapacity.
The record in the case at bar contains no such evidence. In the opinion of the court it is entirely barren of a single item of evidence having any tendency to prove either undue influence or mental unsoundness, and therefore the motion for a new trial is overruled.